**IN THE COURT OF APPEALS OF IOWA**

No. 25-0398
Filed May 21, 2025

**IN THE INTEREST OF M.H. and C.H.,**
**Minor Children,**

**D.L., Mother,**
    Appellant,

**M.H., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Lynn Poschner, Judge.

The mother and father separately appeal the termination of their parental rights to their children. **AFFIRMED ON BOTH APPEALS.**

Cole J. Mayer of Des Moines Juvenile Public Defender, Des Moines, for appellant mother.

David Barajas of Macro Law, LLP, Des Moines, for appellant father.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Erin Romar of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered without oral argument by Buller, P.J., Sandy, J., and Potterfield, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**POTTERFIELD, Senior Judge.**

The juvenile court terminated the mother's and father's parental rights to C.H. (born in 2021) and M.H. (born in 2016) pursuant to Iowa Code section 232.116(1)(f) and (h) (2024), respectively.[1]  The parents separately appeal.  Each concedes the statutory grounds for termination were proved.  Both argue giving them additional time to work toward reunification or, alternatively, establishing a guardianship is in the children's best interests rather than termination of their parental rights.

Our review of termination proceedings is de novo.  *In re D.G.*, 704 N.W.2d 454, 457 (Iowa Ct. App. 2005).  We recognize each parent has their own rights to and relationships with the children.  *See id.* at 459 ("[I]n termination of parental rights proceedings each parent's parental rights are separate adjudications, both factually and legally.").  But we also know that at the time of the termination trial, these parents lived together and remained in a relationship, and each had the goal to share in co-parenting the children with the other.  We cannot ignore the reality of how these parents' lives are intermixed when deciding their respective legal challenges.  That said, we jointly address the parents' respective claims on appeal.

**Additional Time.**  Each parent concedes that M.H. and C.H. could not be returned to their custody at the time of the termination trial in January 2025.  *See* Iowa Code § 232.116(1)(f)(4), (h)(4).  They ask for six more months to work toward

---

[1] The father who appealed is M.H.'s biological and legal father and C.H.'s legal father; when we say "the father," we refer to him.  The parental rights of C.H.'s putative biological father were also terminated; he does not appeal.

reunification with the children. Section 232.104(2)(b) controls the court's ability to give the parents more time. It requires the parents to show the impediments to reunification will no longer exist in six months. *See In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021) (considering section 232.104(2)(b) and placing burden on parent requesting additional time). And we must also consider whether delaying permanency for the children to give the parents additional time is in the children's best interests. *See id.* With that in mind, we review the facts from the underlying child-in-need-of-assistance and termination-of-parental-rights cases.

The children were formally removed from the parents' custody in November 2023 after the Iowa Department of Health and Human Services (HHS) received allegations the mother was using illicit substances while caring for the children. Both parents submitted to drug testing; the mother tested positive for methamphetamine while the father tested positive for methamphetamine, cocaine, THC, and more. Although not every time, the parents continued to test positive for illegal substances over the next year. And the final test they each took before the termination trial—sweat patches worn from November 25 to December 9, 2024— were positive for methamphetamine, amphetamine, and cocaine metabolite. At the termination trial, the parents attributed several missed drugs tests in December and January 2025 to the distance between their new home and the testing location, yet they admitted they failed to tell HHS they were moving to Nebraska. (And provided several dates over different months for when the move took place.) Despite the recent drug test results, each parent claimed sobriety at the termination trial. The mother testified she last used methamphetamine on November 13, 2024 (nearly two weeks before her sweat patch test started) while

the father testified he never used methamphetamine and had not used cocaine since sometime in 2023. This testimony was not credible.[2]

It is unclear what, if any, positive progress the parents made toward sobriety during the nearly fifteen months the children were removed from their custody. We cannot say an additional six months will remedy the issues preventing reunification; we agree with the juvenile court that additional time is not warranted.

**Guardianship.** In the alternative, the parents maintain the juvenile court should have established a guardianship for the children rather than terminating their respective parental rights. The court is authorized to establish guardianship in lieu of termination following a termination hearing. *See* Iowa Code § 232.117(5) (authorizing the court to enter an order in accordance with section 232.104 if, following a termination hearing, "the court does not order the termination of parental rights but finds that there is clear and convincing evidence that the child is a child in need of assistance"). Among other things, the court must conclude that "termination of the parent-child relationship would not be in the best interest of the child[ren]." *Id.* § 232.104(4)(a). And, practically speaking, there must be a named individual who is willing to serve as guardian. *See In re M.H.*, 12 N.W.3d 159, 162–63 (Iowa Ct. App. 2024) ("While the juvenile court seemed to conclude that a guardianship was not appropriate here, we have not found in the

---

[2] While the juvenile court did not explicitly make these credibility findings, it noted the mother's "pattern . . . of minimizing her [substance] use" and cited the parents "history of lack of progress" as a reason it would not grant additional time to work toward reunification. We understand this statement to mean the court did not credit the parents' claimed sobriety. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014) ("We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." (citation omitted)).

record where a guardianship was requested or a possible guardian named. Without a named option and evidence supporting the choice of a particular person, we cannot review the factors that are usually considered when determining whether a guardianship is appropriate in this case.").

While the mother asked the juvenile court—and now us—to establish a guardianship for the children, she has not proposed any individual to take on the role of guardian. The father suggests the paternal grandmother could be the guardian, noting M.H. was placed with her at the time of the termination trial. But the undisputed evidence at trial was that the grandmother was unwilling to do so. Although the parents continue to advocate for a guardianship, we are left without a viable guardian option to review.

And as the juvenile court found:

> [T]he children need predictability in their lives. Waiting for their parents to be able to have them in their custody has not served the children well. They, especially [M.H.], have struggled emotionally and behaviorally throughout the case. The children are doing better now than they have since the case began.

A guardianship is impermanent, *see* Iowa Code § 633.675(1)(c), while termination and adoption will give these children the stability they need and deserve. *See A.M.*, 843 N.W.2d at 113 (recognizing termination and adoption would "enable [the children] to achieve permanency"); *see also In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and "need for a permanent home"). Termination of the mother's and father's parental rights is in the children's best interests.

We affirm the termination of the mother's and father's parental rights.

**AFFIRMED ON BOTH APPEALS.**